UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO

------------------------------------------------------

|   |   |   |
|---|---|---|
| | : | |
| CESAR POWERS | : | CASE NO. 1:08-CV-505 |
| | : | |
| Petitioner, | : | |
| | : | |
| vs. | : | ORDER & OPINION |
| | : | [Resolving Docs. No.1, 14, 15.] |
| WARDEN BOBBY | : | |
| | : | |
| Respondent. | : | |
| | : | |

------------------------------------------------------

JAMES S. GWIN, UNITED STATES DISTRICT JUDGE:

On February 28, 2008, Petitioner Cesar Powers filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. [Doc. 1.]  With his petition, Powers seeks relief from the judgment and sentence that an Ohio state court imposed following his conviction on two counts of felonious sexual penetration and one count of gross sexual imposition.  [Doc. 11, Ex. 4-5.]  Respondent Warden Bobby opposes the petition.  [Doc. 11.]

On September 16, 2008, Magistrate Judge Nancy A. Vecchiarelli filed a Report and Recommendation that recommended the Court deny the Petitioner's writ.  [Doc. 14.]  The Petitioner objects to the Magistrate Judge's Report and Recommendation.  [Doc. 15.]  For the reasons provided below, the Court **ADOPTS** the Magistrate Judge's Report and Recommendation and **DENIES** Petitioner Powers's request for habeas relief.

### I.  Background

Petitioner Powers was convicted before the Court of Common Pleas, Cuyahoga County, of

Case No. 1:08-CV-505
Gwin, J.

two counts of felonious sexual penetration in violation of R.C. 2907.12 and one count of attempted

gross sexual imposition in violation of R.C. 2907.05.  In the underlying state criminal case, the

Petitioner's step-daughter and son accused him of having improper sexual contact with them.  I.W.,

Powers's step-daughter, was approximately 12 years old when her mother married Powers in 1990.

Sometime during this time period, "while walking I.W. to or from school, [the Petitioner] grabbed

[I.W.'s] hand and led her toward a nearby abandoned school building [after] stating [that] he wanted

to teach her about sex.  He stopped when a passerby yelled out to them."  *State v. Powers*, No.

86381, 2006 WL 1044607, ¶ 5 (Ohio Ct. App. Apr. 20, 2006).  I.W. did not tell anyone about this

incident because Powers convinced her "that no one would believe her word over his."  *Id.*

Several months later, I.W. discovered, upon waking up one night, that the Petitioner was

naked and lying on top of her.  She told the Petitioner to get up, "but he refused and told her to stop

resisting and to be quiet. He then spat on his fingers[,] . . . inserted them into her vagina[,] . . . .

removed his fingers[,] and inserted his penis into her vagina." *Id.* ¶ 6. During the assault, I.W. stated

that she went numb and laid there waiting for it to be over. *Id.*  After the assault, Powers again

convinced I.W. not to tell anyone about what had taken place and gave I.W. money as an apparent

bribe. *Id.*  Some time later, a similar incident occurred.  I.W. "was watching television when [the

Petitioner] told her [that] he needed to talk to her. He left the room, but returned naked and stood

over her. [He] again inserted first his fingers and then his penis into her vagina." *Id.*  ¶ 7. I.W. once

again "went numb and laid there waiting for it to be over.  She again did not immediately tell anyone

of this assault." *Id.*

In December 2003, I.W.'s mother told her that her brother, C.W., had been talking about

sexual abuse he endured from the Petitioner. *Id.* ¶ 8. At this time, "I.W. informed her mother that

Case No. 1:08-CV-505
Gwin, J.

"she believed C.W.[] and she described the assaults by the [Petitioner] that she had endured." *Id.*
The police, as well as Children and Family Services, were then called to the home. *Id.*

On April 9, 2004, the Cuyahoga County Grand Jury indicted Petitioner Powers on eight separate counts. The first five counts – two counts of rape, two counts of felonious sexual penetration, and one count of kidnapping – concerned crimes that the Petitioner allegedly committed against his step-daughter. *See id.* ¶ 2-3. Counts six through eight – one count of gross sexual imposition with a sexually violent predator specification and two counts of kidnapping with sexual motivation and sexually violent predator specifications – involved crimes that the Petitioner allegedly committed against his son. *See id.* ¶ 4.

On April 22, 2004, the Petitioner was arraigned and he pleaded not guilty to the charges in the indictment. On September 27, 2004, he filed a motion to sever the counts that the trial court granted on October 25, 2004, thereby requiring that the Petitioner be tried separately on counts one through five involving his step-daughter and on counts six through eight involving his son. *See id.* ¶ 9.

The Petitioner's jury trial began on November 15, 2004. At trial, I.W. testified "that she looked up to [the Petitioner] as a parental figure, and she felt he had authority over her. She also [stated] that she attempted to stop him, both verbally and physically, when he assaulted her, but was unable to stop him." *Id.* ¶ 10. At trial, the Petitioner requested a Crim. R. 29 acquittal that the court denied. *Id.* ¶ 11. On November 19, 2004, the Petitioner was "convicted of two counts of felonious sexual penetration with the jury finding that he used force or the threat of force to commit the offenses . . . . [Powers] was found not guilty of counts one and two of the indictment, and count five was dismissed by the state prior to deliberations." *Id.* On December 16, 2004, the trial court imposed

Case No. 1:08-CV-505
Gwin, J.

mandatory life sentences on each count and found the Petitioner to be a habitual sex offender. *Id.*

¶ 12.

The trial court disposed of counts six through eight of the original indictment in a hearing held

on May 9, 2005. *See id.* ¶ 14.  Pursuant to a plea agreement that amended count six to attempted

gross sexual imposition without specifications, the Petitioner entered a plea of no contest; the

remaining counts were nolled.  *Id.*  The Petitioner was sentenced to a term of one year in prison, to

be served concurrently with the life sentences imposed on his convictions for felonious sexual

penetration.  *See id.*

On May 11, 2005, Petitioner Powers, through counsel, filed a notice of appeal with the state

appellate court.  [Doc. 11, Ex. 6.]  The following day, the Petitioner filed a delayed notice of appeal

with the state court of appeals, [Doc. 11, Ex. 7.], raising the following single assignment of error:

> The trial court erred in failing to grant the Petitioner's motion for judgment of acquittal
> pursuant to Rule 29(A) Ohio Rules of Criminal Procedure in that the state of Ohio did
> not introduce sufficient evidence of the use or threatened use of force to support the
> specification.

[Doc. 11, Ex. 10 at 4.]  On May 1, 2006, the state appellate court affirmed the judgment of the trial

court.  [Doc. 11, Ex. 12 at 10.]

On June 12, 2006, Powers filed a *pro se* notice of appeal in the Supreme Court of Ohio,

setting forth the single proposition of law articulated above.  [Doc. 11, Ex. 14 at 10.]  On October

4, 2006, the Supreme Court of Ohio dismissed Powers's appeal because it did not involve any

substantial constitutional questions.  [Doc. 11, Ex. 16.] On July 28, 2006, Powers then filed an

application to re-open his direct appeal pursuant to Ohio App. R. 26(B).  With this application, he

argued that his trial counsel was ineffective because (1) he failed to object to the Petitioner's

Case No. 1:08-CV-505
Gwin, J.

convictions for felonious sexual penetration on the basis that the statute under which the convictions were obtained had been repealed prior to Powers's indictment and (2) he failed to object to the Petitioner's convictions for felonious sexual penetration on the ground that they were barred by the applicable statute of limitations. [Doc. 11, Ex. 17 at 5-10.]  On November 15, 2006, the state court of appeals denied the Petitioner's application to re-open his direct appeal. [Doc. 11, Ex. 22 at 8.] The state court of appeals also denied, as untimely, Powers's application to reconsider its opinion pursuant to Ohio App. R. 26(A)  that was filed on July 28, 2006. [Doc. 11, Ex. 21.]

The Petitioner filed a timely notice of appeal of the denial of his application to re-open his appeal in the Supreme Court of Ohio on December 22, 2006. [Doc. 11, Ex. 25.] On February 28, 2007, the Supreme Court of Ohio dismissed the Petitioner's appeal after finding it did not involve any substantial constitutional questions. [Doc. 11, Ex. 27.]

On February 28, 2008, Petitioner Powers filed a petition for a writ of habeas corpus in this Court.  [Doc. 1.]  In a supplement to his petition, Powers set forth three grounds for federal habeas relief: (1) there was insufficient evidence that Powers used force or a threat of force to commit the crime of felonious sexual penetration; (2) the verdicts finding Powers guilty of felonious sexual penetration with a force or threat of force specification but not guilty of rape were inconsistent because the elements for both crimes are identical; and (3) the trial court erred in convicting Powers under sections of a statute that was repealed thirty years prior to his conviction. [Doc. 10.]

After Respondent Warden Bobby filed a Return of Writ on June 27, 2008, [Doc. 11.], Magistrate Judge Vecchiarelli filed a Report and Recommendation that recommended the Court deny Powers's petition.  [Doc. 14.]   The Petitioner objects to the Magistrate Judge's Report and Recommendation.  [Doc. 15.]  The Court considers each of the Petitioner's objections below.

-5-

Case No. 1:08-CV-505
Gwin, J.

## II.  Legal Standard

*A. Federal Magistrates Act*

The Federal Magistrates Act requires a district court to conduct a *de novo* review only of those portions of a Report and Recommendation to which an objection has been made.  *See* 28 U.S.C. § 636(b)(1).  As noted in Magistrate White's Report and Recommendation, any objections must be filed with the Clerk of Court within ten days of the report's issuance.  Parties waive their right to appeal the Magistrate Judge's Recommendation if they fail to object within the time allotted. *See id.*

*B. The Antiterrorism and Effective Death Penalty Act*

The Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, 110 Stat. 1214 (1996) ("AEDPA"), governs collateral attacks on state court decisions.  The AEDPA provides that federal courts cannot grant a habeas petition for any claim that the state court adjudicated on the merits unless the adjudication: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding."  28 U.S.C. § 2254(d); *see also Miller v. Francis,* 269 F.3d 609, 614 (6th Cir. 2001).

The United States Supreme Court outlined the proper application of § 2254(d) in *Williams v. Taylor,* 529 U.S. 362 (2000).  To justify a grant of habeas relief under the "contrary to" clause, "a federal court must find a violation of law clearly established by holdings of the Supreme Court, as opposed to its dicta, as of the time of the relevant state court decision."  *Miller,* 269 F.3d at 614

Case No. 1:08-CV-505
Gwin, J.

(quoting *Williams*, 529 U.S. at 412) (internal quotations omitted). A federal habeas court may grant the writ "under the 'unreasonable application' clause . . . if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413 (citations omitted). The Sixth Circuit holds that, even if a federal court determines that a state court incorrectly applied federal law, the federal court still cannot grant habeas relief unless it also finds that the state court ruling was unreasonable. *Simpson v. Jones*, 238 F.3d 399, 405 (6th Cir. 2000).

## C. Exhaustion Standard

State prisoners must exhaust their state remedies prior to raising claims in federal habeas corpus proceedings. *See* 28 U.S.C. § 2254(b)-(c); *Rose v. Lundy*, 455 U.S. 509 (1982). This requirement is satisfied "when the highest court in the state in which the petitioner was convicted has been given a full and fair opportunity to rule on the petitioner's claims." *Manning v. Alexander*, 912 F.2d 878, 881 (6th Cir. 1990). If relief is no longer available in state court, however, exhaustion can be rendered moot: "If no remedy exists, and the substance of a claim has not been presented to the state courts, no exhaustion problem exists; rather, it is a problem of determining whether cause and prejudice exist to excuse the failure to present the claim in the state courts." *Rust v. Zent*, 17 F.3d 155, 160 (6th Cir. 1994).

## D. Procedural Default Standard

A claim may become procedurally defaulted in two ways. First, a petitioner may fail to comply with a state procedural rule in presenting his claim to the appropriate state court. *See Franklin v. Anderson*, 434 F.3d 412, 417 (6th Cir. 2006). In deciding whether a petitioner's federal

-7-

Case No. 1:08-CV-505
Gwin, J.

claim is procedurally defaulted because of his noncompliance with a state procedural rule, the Sixth Circuit examines four factors:  (1) whether there is a state procedural rule that applies to the petitioner's claim and whether the petitioner failed to comply with that rule; (2) whether the state courts actually enforced the procedural rule at issue; (3) whether the state procedural forfeiture is an adequate and independent state ground on which the state can rely to foreclose review of a federal constitutional claim; and (4) if the petitioner did not comply with a state procedural rule that constituted an adequate and independent state ground, whether the petitioner has demonstrated that there was cause for him not to follow the procedural rule and that he was actually prejudiced by the alleged constitutional error.  *See Buell v. Mitchell*, 274 F.3d 347, 348 (6th Cir. 2001); *see also Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986).

Second, a petitioner may cause his claim to be procedurally defaulted by failing to raise it  in state court and to pursue it through the state's "ordinary appellate review procedures." *O'Sullivan v. Boerckel*, 526 U.S. 838, 847 (1999).  If, at the time of the federal habeas petition, state law no longer allows the petitioner to raise the claim, the claim is procedurally defaulted.  *See Engle v. Isaac*, 456 U.S. 107, 125 n. 28 (1982); *see also Coleman v. Thompson*, 501 U.S. 722, 731-32 (1991).  This notion differs from exhaustion, as AEDPA's exhaustion requirement only "refers to remedies still available at the time of the federal petition." *Engle*, 456 U.S. at 125 n. 28.  Thus, when state court remedies are no longer available to a petitioner because he fails to use them within the required time period, procedural default – not exhaustion – bars federal court review. *See id.*  In Ohio, a petitioner cannot raise a claim in post-conviction proceedings when this claim could have been litigated before judgment or on direct appeal.  *See id.* As a result, if an Ohio petitioner fails to adequately raise a claim on direct appeal, the claim is procedurally defaulted.  *See id.*

Case No. 1:08-CV-505
Gwin, J.

To adequately raise a claim on direct appeal, a petitioner must "fairly present" the claim to the state court. *McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000). In doing so, a "petitioner must present his claim to the state courts as a federal constitutional issue – not merely as an issue arising under state law." *Koontz v. Glossa*, 731 F.2d 365, 368 (6th Cir. 1984). A petitioner can demonstrate that his claim has been fairly presented to the state court as a federal constitutional claim by: (1) relying upon federal cases employing constitutional analysis; (2) relying upon state cases employing federal constitutional analysis; (3) phrasing the claim in terms of constitutional law or in terms sufficiently particular to allege a denial of a specific constitutional right; or (4) alleging facts well within the mainstream of constitutional law. *Newton v. Million*, 349 F.3d 873, 877 (6th Cir. 2003).

A habeas court will consider the merits of a federal claim that was procedurally defaulted in the state court only if "the petitioner can show cause to excuse his failure to present the claim[] appropriately in state court[] and actual prejudice as a result." *Stanford v. Parker*, 266 F.3d 442, 451 (6th Cir. 2001); *see also Coleman v. Thompson*, 501 U.S. 722, 750 (1991); *Teague v. Lane*, 489 U.S. 288, 298-99 (1989). To demonstrate cause, the petitioner must establish "that an 'objective factor external to the defense impeded counsel's efforts to comply' with the state procedural rule." *Franklin*, 434 F.3d at 417 (quoting *Murray v. Carrier*, 477 U.S. 478, 488 (1986)). To demonstrate prejudice, the petitioner must show "that the errors at trial 'worked to [petitioner's] *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions.'" *Jells v. Mitchell*, 538 F.3d 478, 488 (6th Cir. 2008) (citing *United States v. Frady*, 456 U.S. 152, 170 (1982)). Under this standard, prejudice does not occur unless the petitioner demonstrates that there is "a reasonable probability" that the outcome of the trial would have been different. *Mason v. Mitchell*, 320 F.3d 604, 629 (6th Cir. 2003) (citing *Strickler v. Greene*, 527 U.S. 263, 289 (1999)).

Case No. 1:08-CV-505
Gwin, J.

Finally, "[i]n cases involving probable innocence, courts address the merits of the defaulted claim to avoid a fundamental miscarriage of justice." *Stanford*, 266 F.3d at 452; *see also* *Schlup v. Delo*, 513 U.S. 298, 317-23 (1995).  In claiming that "a constitutional violation has 'probably resulted' in the conviction of one who is 'actually innocent' of the substantive offense," *Jones v. Bradshaw*, 489 F. Supp. 2d 786, 806 (N.D. Ohio 2007) (citing *Dretke v. Haley*, 541 U.S. 386, 392 (2004)), a petitioner must "support his allegations of constitutional error with new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence – that was not presented at trial." *Schlup*, 513 U.S. at 324.  "[A] substantial claim that constitutional error has caused the conviction of an innocent person is extremely rare" and, as a result, "claims of actual innocence are rarely successful." *Id.* at 324.

## III.  Analysis

### A.  Procedurally Defaulted Grounds for Relief

Contrary to the Magistrate Judge's recommendation, Petitioner Powers argues that his ineffective assistance of counsel claim and his three grounds for habeas relief are not procedurally defaulted and can properly be considered by the Court.  On direct appeal, the Petitioner did not raise his ineffective assistance of counsel claim or his second and third grounds for habeas relief.  He first raised his ineffective assistance of counsel claim in his Rule 26(B) application to re-open his direct appeal.  [Doc. 11, Ex. 17.]  The state court of appeals subsequently denied the Petitioner's application, holding that the doctrine of *res judicata* barred consideration of the Petitioner's claim, [Doc. 11, Ex. 22 at 7-8.], and the Supreme Court of Ohio affirmed this decision.  [Doc. 11, Ex. 27.] Further, the Petitioner never presented his second and third claims for habeas relief to the state

Case No. 1:08-CV-505
Gwin, J.

appellate court or to the Supreme Court of Ohio.  As a result, the Petitioner's ineffective assistance

of counsel claim and his second and third grounds for relief are procedurally defaulted.  Because the

Petitioner does not demonstrate cause or prejudice for the procedural default and does not present

a viable "actual innocence" claim, the Court agrees with Magistrate Judge Vecchiarelli and denies

Powers's ineffective assistance of counsel claim, as well as his second and third grounds for relief,

due to procedural default.

As the Ohio Supreme Court has held, the doctrine of *res judicata* bars a defendant from

raising any constitutional claims in a post-conviction appeal under R.C. § 2953.21 that were or could

have been raised by the defendant at trial or on direct appeal.  *See State v. Perry*, 226 N.E.2d 104,

108 (Ohio 1967); *see also State v. Cole*, 443 N.E.2d 169, 171 (Ohio 1982) (applying *Perry* in the

context of a petitioner's ineffective assistance of counsel claim and holding that it was barred by *res

judicata*).  The Sixth Circuit has also held that *res judicata* can provide a proper basis for the

dismissal of ineffective assistance of counsel claims. *Fautenberry v. Mitchell*, 515 F.3d 614, 633 (6th

Cir. 2008).  Further, the Sixth Circuit has stated that *res judicata* "is an actually enforced, adequate

and independent state ground upon which the Ohio state courts consistently refuse to review the

merits of a defendant's claims." *Id.*; *see also Coleman v. Mitchell*, 268 F.3d 417, 427 (6th Cir. 2001)

(concluding that the "application of *res judicata* under § 2953.21 is an adequate and independent

state ground justifying foreclosure of constitutional claims in habeas"); *Mapes v. Coyle*,171 F.3d 408,

421 (6th Cir.1999) (rejecting a habeas petitioner's attempt to "demonstrate Ohio's wavering

commitment to its procedural default rules").

In this case, Powers failed to raise his ineffective assistance of counsel claim on direct appeal

before the state appellate court and the Supreme Court of Ohio.  As a result, the state court of

Case No. 1:08-CV-505
Gwin, J.

appeals properly determined that *res judicata* barred it from considering Powers's ineffective assistance claim.  The Petitioner's argument that his procedural default of this claim should be excused because his appellate counsel had a conflict of interest that prevented him from arguing that he was ineffective is without merit.  Powers proceeded *pro se* in the Supreme Court of Ohio and, therefore, could have presented his ineffective assistance claim to that court.  Because the Petitioner does not show "cause" and "prejudice" sufficient to excuse the default of his ineffective assistance of counsel claim, the Court cannot consider it.

Additionally, the Court cannot rule upon the Petitioner's second and third claims for habeas relief because they are procedurally defaulted.  The Petitioner did not raise these claims before the state court of appeals or the Supreme Court of Ohio and the state appellate court denied Powers's applications for reconsideration and to re-open direct appeal – decisions that the Supreme Court of Ohio affirmed. [Docs. 11, Ex. 22 at 8; Ex. 21.; 11, Ex. 27.]  Further, Powers has not demonstrated cause and prejudice for the default.  As a result, the Court does not consider the Petitioner's second and third claims for habeas relief on the basis of *res judicata* and failure to fully and fairly present the claims to the appropriate state courts.

B.      *Remaining Ground for Relief*

In his remaining claim – the first ground for relief – Petitioner Powers argues that he was denied due process because there was insufficient evidence presented at trial to support the specification that Powers used force or a threat of force to commit the crime of felonious sexual penetration.  [Doc. 10.]  The Court denies Powers's request for habeas relief with respect to this claim because the decision of the state court of appeals in this case was not contrary to, and did not

-12-

Case No. 1:08-CV-505
Gwin, J.

involve an unreasonable application of, clearly established federal law, as determined by the United

States Supreme Court.

A state court unreasonably applies federal law when it "'identifies the correct governing legal

principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts

of the prisoner's case.'" *Biros v. Bagley*, 422 F.3d 379, 386 (6th Cir. 2005) (citing *Williams*, 529

U.S. at 413). Federal courts review habeas claims involving mixed questions of law and fact "under

the 'unreasonable application' prong of 28 U.S.C. § 2254(d)(1)." *Id.* In this context, factual findings

made by the state court are presumed to be correct, but may be rebutted by clear and convincing

evidence. *See Johnson v. Bell*, 525 F.3d 466, 480 (6th Cir. 2008).

The due process clause of the Fourteenth Amendment requires that a criminal conviction be

based upon proof beyond a reasonable doubt as to every fact necessary to constitute the offense

charged. *See In re Winship,* 397 U.S. 358, 364 (1970); *see also Albright v. Oliver*, 510 U.S. 266,

296 (1994); *Allen v. Redman*, 858 F.2d 1194, 1196-97 (6th Cir. 1988). A conviction is supported

by sufficient evidence if, "after viewing the evidence in the light most favorable to the prosecution,

*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable

doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). When considering habeas claims, federal

courts do not weigh the credibility of witnesses and must resolve all conflicting inferences in favor

of the prosecution. *See United States v. Jackson*, 470 F.3d 299, 309 (6th Cir. 2006).

In this case, the state appellate court that reviewed the Petitioner's case first stated that "the

degree of force necessary for imposition of a sentence of life imprisonment for the crime of rape is

related to the age, size and strength of the parties, as well as to the relationship between the predator

and the victim." *State v. Powers*, No. 86381, 2006 WL 1044607, ¶ 32 (Ohio Ct. App. Apr. 20, 2006)

-13-

Case No. 1:08-CV-505
Gwin, J.

(citing *State v. Eskridge*, 526 N.E.2d 304, 306 (Ohio 1988)).  The court also noted that the victim in this case looked up to the Petitioner, considered him as a father figure with authority over her, and "attempted, both verbally and physically, to get [the Petitioner] to stop the assaults, but was unsuccessful because of her young age." *Id.* ¶ 33.  As a result of these findings, the state appellate court concluded that, due to his age and status, the Petitioner "was able to manipulate the victim, both physically and mentally. The record clearly demonstrates competent and credible evidence in support of his convictions, including the finding of the use of force or threat of force." *Id.* ¶ 34.  In view of this determination, the state appellate court found that it was "clear that a rational trier of fact could have found that all the essential elements of the crime had been proven beyond a reasonable doubt." *Id.*  (citing *Jackson*, 443 U.S. at 319).

Powers has not attempted to demonstrate, by clear and convincing evidence, that the state appellate court's abovementioned factual findings were erroneous.  The Court therefore presumes that these findings were correct.  Further, in light of the state appellate court's legal and factual analysis, the Court determines that there was sufficient evidence presented at trial to allow a rational trier of fact to find the Petitioner guilty of committing the crime of felonious sexual penetration by using force or a threat of force.  The decision of the state court of appeals in this case was therefore not contrary to, and did not involve an unreasonable application of, clearly established federal law, as determined by the United States Supreme Court.  As a result, the Court denies Petitioner Powers's petition for habeas relief with respect to his first ground for relief.

## IV.  Conclusion

For the foregoing reasons, the Court **ADOPTS** the Magistrate Judge's Report and

-14-

Case No. 1:08-CV-505
Gwin, J.

Recommendation and **DENIES** Petitioner Cesar Powers's § 2254 petition.  Further, the Court

certifies, pursuant to 28 U.S.C. §1915(a)(3), that an appeal from this decision could be taken in good

faith, and the Court hereby issues a certificate of appealability pursuant to 28 U.S.C. 2253(c); Fed.

R. App. P. 22(b) as to (1) the first ground for relief; and (2) whether the Petitioner's ineffective

assistance of counsel claim and his second and third claims for habeas relief were procedurally

defaulted and whether the Petitioner has demonstrated "cause" and "prejudice" for the procedural

default.

      IT IS SO ORDERED.


Dated: November 3, 2008                    s/          *James S. Gwin*
                                               JAMES S. GWIN
                                               UNITED STATES DISTRICT JUDGE